**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA CHONG and ZACK SCHWARTZ as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>KIND LLC,<br><br>    Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; AND UNJUST ENRICHMENT**<br><br>JURY TRIAL DEMANDED |

**INTRODUCTION**

1.      Plaintiffs Lisa Chong and Zack Schwartz, by and through their counsel, bring this class action against Defendant KIND LLC to seek redress for Defendant's deceptive practices in labeling and marketing its KIND products.

2.      Consumers are increasingly health conscious and, as a result, many consumers seek foods high in protein. To capitalize on this trend, Defendant prominently labels its KIND products as providing specific amounts of protein per serving depending on the product, such as "10g PROTEIN" on the label of its Dark Chocolate Clusters. Consumers, in turn, reasonably expect that each product will provide the actual amount of protein per serving that the front of the product package claims it will.

3.      In truth, however, Defendant's products do not deliver the amount of protein that the labels claim. Based on amino acid content testing, Defendant's products contain less protein than claimed, meaning, for example, rather than having 10 grams of protein per serving, Defendant's Dark Chocolate Clusters product actually has only 8.4 grams (i.e., an overstatement by approximately 20%).

4.      Further, Defendant uses proteins of low biological value to humans in their products, such as oats. Accordingly, when the amino acid content is adjusted for protein digestibility (the "Protein Digestibility Corrected Amino Acid" score, or "PDCAAS"), Defendant's products provide even less protein per serving than amino acid content testing alone reveals. Oats typically have PDCAAS scores of between 0.5 and 0.6.

5.      Defendant's products are also misbranded. Parallel state and federal regulations require any product that makes a protein claim to include in the nutrition facts panel the percentage of the daily value of the protein in the product based on its amino acid content and PDCAAS. Defendant's products prominently make protein content claims but some of its Products, such as the nut bars, nut clusters, cereals and oatmeal, fail to provide the required percent daily value of protein in the nutrition facts panel.

6.      Defendant's misrepresentations and misbranding caused Plaintiffs and members of the class to pay a price premium for the products.

Class Action Complaint

**PARTIES**

7.      Lisa Chong is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Francisco, California (San Francisco County).

8.      Zack Schwartz is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Diego, California.

9.      Lisa Chong and Zack Schwartz are collectively referred to hereafter as "Plaintiffs."

10.     Defendant KIND LLC ("Defendant") is a limited liability company existing under the laws of the State of Delaware, having its principal place of business in New York.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and Defendant are citizens of different states.

12.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

14.     In accordance with California Civil Code Section 1780(d), Plaintiff Lisa Chong concurrently files herewith a declaration establishing that, at various times throughout the class period, she purchased KIND Nut Bars in Daly City, California. (Plaintiff Lisa Chong's declaration is attached hereto as Exhibit A.)

15.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

**SUBSTANTIVE ALLEGATIONS**

16.     Defendant manufactures, distributes, markets, advertises, and sells a variety of breakfast and snack products in the United States under the brand name "KIND."  Many of these products have packaging that predominately, uniformly, and consistently states on the principal display panel of the product labels that the products contain and provide a certain amount of protein per serving. Plaintiffs have attached as Exhibit B a non-exhaustive list of the KIND products that make protein claims on the front of the product packages. The products listed in Exhibit B, and any other KIND brand product that claims a specific amount of protein on the front of its label, will hereinafter be referred to as the "Products."

17.     The representation that the Products contain and provide a specific amount of protein per serving was uniformly communicated to Plaintiffs and every other person who purchased any of the Products in California and the United States. The same or substantially similar product label has appeared on each Product during the entirety of the Class Period in the general form of the following example:



15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2       18.     The nutrition facts panel on the side of the Products likewise repeats the protein

3  content claims, although some of the Products, such as the nut bars, nut clusters, cereals and oat-

4  meal, fail to provide any referenced percent daily value of its protein content as state and federal

5  regulations require. The side panel of the Products has appeared consistently throughout the Class

6  Period in the general form of the following example:

7

8

9

10

11

12

13



14

15

16

17

18

19

20

21

22

23       19.     As described in detail below, Defendant's advertising and labeling of the Products

24  as containing and providing specific amounts of protein per serving is false, misleading, and in-

25  tended to induce consumers to purchase the Products at a premium price, while ultimately failing

26  to meet consumer expectations. These representations deceive and mislead reasonable consumers

27  into believing that a serving of the Products will provide the grams of protein as represented on

28  the label, when in fact, protein content testing for the KIND Dark Chocolate Clusters, for exam-

ple, revealed that a serving contains only 8.4 grams of protein – an overstatement by approximately 20%. Further, when correcting for the digestibility (and therefore bio-usability) of the protein through PDCAAS, the amount provided will be even less.

**Consumer Demand for Protein**

20.     Many American consumers are health conscious and seek wholesome, natural foods to keep a healthy diet, so they routinely rely upon nutrition information when selecting and purchasing food items. This is especially true in the community of athletes, registered dietitians, and coaches, to which Defendant markets. As noted by FDA Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet." Indeed, the FDA recommends relying on Nutrition Facts Labels as the primary tool to monitor the consumption of protein.[1]

21.     Protein is found throughout the body—in muscle, bone, skin, hair, and virtually every other body part or tissue. The health benefits of protein are well studied and wide ranging. Scientific studies have confirmed that protein can assist in weight loss, reduce blood pressure, reduce cholesterol, and control for risk factors for cardiovascular diseases. The National Academy of Medicine recommends that adults get a minimum of .8 grams of protein for every kilogram of body weight per day, or just over 7 grams for every 20 pounds of body weight.[2] For a 140-pound person, that means about 50 grams of protein each day. For a 200-pound person, that means about 70 grams of protein each day.

22.     Athletes and fitness enthusiasts typically consume much higher amounts of protein each day; typically between 1 to 1.5 grams of protein for every pound of body weight.

23.     The health benefits of protein are just as important, if not more important, for children. Children are in a relative state of constant growth and rely on protein as the building block

---

[1] FDA Protein Fact Sheet,
https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/factsheets/Protein.pdf
[2] National Academies of Medicine. *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients).*

of muscle, bone, skin, hair, and virtually every other body part or tissue. The National Academies of Science recommends the following amounts of daily intake of protein based on age group: 1-3 years old: 13 g of protein per day; 4-8 years old: 19 g of protein per day; 9-13 years old: 34 g of protein per day.[3]

24.     Proteins are not a monolithic substance, but instead come in many varieties. Proteins are essentially chains of different amino acids, and different types of amino acids chained together in different ways will make different types of proteins. Further, the makeup of the protein that is ingested changes the function of the protein in the body, and certain types of proteins are more easily digested and used by humans than others.

25.     Typically, a "complete protein" is a protein that contains all nine essential amino acids. An essential amino acid is one that the human body cannot produce on its own and must be obtained through diet. Essential amino acids may be measured by the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"), which FDA regulations require for the calculation of Daily Reference Values ("DRV"). 21 C.F.R. § 101.9(c)(7)(ii); FDA Food Labeling Guide, p.29, Question N. 22.

26.     The PDCAAS method requires the manufacturer to determine the amount of essential amino acids that the food contains and then multiply that number by humans' ability to digest the amino acid profile.

27.     Defendant uses plant-based proteins in their products. Defendant claims "We are proud that nearly all the protein in our products comes from plant-based protein sources, like whole nuts." Because of the differences in benefits depending on the amino acid composition of a protein, the source of protein is important. Whey protein is animal-based and contains all nine essential amino acids. It has a high biological value and is fully digestible by humans. Thus, whey protein has a PDCAAS of 1.0. Plant protein contains higher levels of antioxidants, but rarely contains all nine essential amino acids.  Further, plant proteins such as oat proteins, which Defendant uses in its Products according to their ingredient lists, are not fully digested by humans. Oat pro-

---

[3] *Id.*

teins typically have a PDCAAS of .5-.6, meaning only 50-60% of the protein from those sources will be digested and available to humans.

28.     By combining proteins with a 1.0 PDCAAS, such as whey, with lower quality proteins such as oats that typically have .5 or .6 PDCAAS, the overall PDCAAS for the combination will be far lower than 1.0.

29.     Accordingly, Defendant's use of low quality proteins, even in combination with some higher quality proteins, means that they actually provide far less protein to humans than their labels claim, or that amino acid content testing without correcting for digestibility shows.

**Federal and State Regulations Governing Food Labeling**

30.     The Food and Drug Administration regulates nutrition content labeling. According to these regulations, "[a] statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as a Percent of Daily Value . . . *shall be given if a protein claim is made for the product . . .*" 21 C.F.R. 101.9(c)(7)(i) (emphasis added).

31.     Although FDA guidance provides that a declaration of the DRV for protein is "not mandatory" in typical circumstances, that same guidance is equally clear that "[t]he percent of the DRV is required if a protein claim is made for the product."[4]

32.     Further, FDA regulations require the DRV to be calculated using amino acid analysis, more specifically the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"). 21 C.F.R. § 101.9(c)(7)(ii); FDA Food Labeling Guide, p. 29, Question N.22. The PDCAAS method does not calculate protein content by nitrogen combustion, which is otherwise permitted under 21 C.F.R. § 101.9(c)(7) for products that do not make protein content claims.[5]

33.     Accordingly, when a product makes a protein content claim, FDA regulations require manufacturers to calculate the amount of amino acids that the food contains and then multi-

[4] Guidance for Industry: A Food Labeling Guide ("FDA Food Labeling Guide") p. 29, Question N22, U.S. Food & Drug Administration, https://www.fda.gov/media/81606/download (last accessed February 18, 2020).
[5] Specifically, the regulation states that the grams of protein figure in the nutrition fact box "may be calculated on the basis of the factor of 6.25 times the nitrogen content of the food."

ply that amount by humans' ability to digest the amino acid profile (the PDCAAS) to come up with a percent daily value.

34.     Identical federal and California laws regulate the content of labels on packaged food and require truthful, accurate information on the labels of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. §§ 101, 102, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed below are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on the labeling of packaged food for sale in the United States.

35.     Under the FDCA, the term false has its usual meaning of "untruthful," while the term misleading is a term of art that covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is false or misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

36.     Further in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is false and misleading); and California Health & Safety Code § 110705 (misbranded if words, statements and other information required by the Sherman Law are either missing or not sufficiently conspicuous).

37.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

38.     Representing that the Products contain a certain amount of protein per serving, as Defendant's labels do, is a statement of fact, and use of these phrases on the labels of packaged food is limited by the aforementioned misbranding laws and regulations.

**Defendant's Marketing and Labeling of its Products Violates State and Federal Food Labeling Laws**

39.     Defendant's Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Products' labels state that each Product contains and provides a specific amount of protein per serving—such as "10g PROTEIN" for the Dark Chocolate Clusters—when, in fact, amino acid content testing reveals that the Products contain less – such as 8.4 grams of protein for the Dark Chocolate Clusters (an overstatement by approximately 20%).

40.     Further, for some of its Products, such as the nut bars, nut clusters, cereals and oatmeal, Defendant makes protein content claims on the front of its packages and yet has left the Percent Daily Value column of its nutrition facts for protein completely blank. Because Defendant made a protein content claim, it was statutorily obligated to calculate the protein content of its Products via the amino analysis described above and to provide a percent daily value figure in the Nutrition Facts panel using the PDCAAS method described above. Defendant has failed to do so, and these Products, such as the nut bars, nut clusters, cereals and oatmeal, are accordingly misbranded.

41.     Defendant's marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

a.   Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b.   Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

c.   Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

42.   Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

d.   Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

e.   Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

f.   Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

g.   Section 110765, which makes it unlawful for any person to misbrand any food; and

h.   Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

43.   Defendant has violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. § 101.9 (c)(7), which have been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

44.   A reasonable consumer would expect that the Products contain and provide what Defendant identifies them to contain and provide on the product labels and that the labels would not be contrary to the policies or regulations of the State of California and/or the FDA. For example, a reasonable consumer would expect that when Defendant labels its Products as containing "10g PROTEIN" per serving, as it claimed on the Dark Chocolate Clusters' labels, the Products would provide 10 grams of protein per serving. However, based on amino acid content testing,

Defendant's Products contain less. For example, the Dark Chocolate Clusters only contained 8.4 grams – an overstatement of approximately 20%.

45.     Moreover, based on the types of protein stated in the Products' ingredient lists, the amount of digestible or usable protein the Products actually deliver to the human body is even lower than the amino content testing itself reveals. Defendant uses poor quality proteins, such as oat proteins, in the Products, which will result in each Product's overall PDCAAS being far less than 1.0.

46.     Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's food labeling claims, especially at the point of sale. Consumers would not know the true protein content of the Products merely by looking elsewhere on the product package. Its discovery requires investigation well beyond the grocery store aisle and knowledge of food chemistry beyond that of the average consumer. An average consumer does not have the specialized knowledge necessary to ascertain that a serving of a Product does not contain the number of grams of protein that is represented on the label. An average consumer also lacks the specialized knowledge necessary to determine the PDCAAS for the Products. That combined with Defendant's active concealment in representing that the Products contain and provide specific amounts of protein per serving, and not disclosing otherwise anywhere on the label, much less by listing the Protein DRV for some of the Products, such as the nut bars, nut clusters, cereals and oatmeal, as it is required to do, gave the average reasonable consumer no reason to suspect that Defendant's representations on the packages were false. Therefore, consumers had no reason to investigate whether the Products actually do contain and provide the amount of protein per serving that the labels claim they do. Thus, reasonable consumers relied on Defendant's representations regarding the nature of the Products.

47.     Defendant intends and knows that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done with the claims on that their Products that they contain and provide specific amounts of protein per serving.

Class Action Complaint

**Defendant Misleadingly Markets Its Products to Increase Profits and Gain a Competitive Edge**

48.     In making false, misleading, and deceptive representations, Defendant distinguishes its Products from competitors' products. Defendant knew and intended that consumers would purchase, and pay a premium for, products labeled as having more protein over comparable products that do not contain misleading protein representations on the product labels. By using this branding and marketing strategy, Defendant is stating that its Products are superior to, better than, and more nutritious and healthful than other products that do not misrepresent the number of grams of protein on their labels.

**Defendant Intends to Continue to Market its Products as Containing More Protein than the Products Actually Contain**

49.     Because consumers pay a price premium for products that contain more protein, by labeling their Products as containing more grams of protein per serving than they actually contain, Defendant is able to both increase their sales and retain more profits.

50.     Defendant engaged in the practices complained of herein to further its private interests of: (i) increasing sales of its Products while decreasing the sales of competitors that do not misrepresent the number of grams of protein contained in their products, and/or (ii) commanding a higher price for its Products because consumers will pay more for these Products due to consumers' demand for products containing more protein.

51.     The market for protein products is continuing to grow and expand, and because Defendant knows consumers rely on representations about the number of grams of protein in food products, Defendant has an incentive to continue to make such false representations. In addition, other trends suggest that Defendant has no incentive to change their labeling practices.

52.     For example, one market analysis revealed that between 2013-2017, product launches with a protein claim grew 31%.[6]

53.     To capitalize on the growing market, Defendant has since expanded its product line from snack bars, to oatmeal, granola, frozen smoothie bowls and other snacks and have con-

---

[6] https://www.bakeryandsnacks.com/Article/2018/11/26/10-key-snack-trends-to-watch?utm_source=copyright&utm_medium=OnSite&utm_campaign=copyright

tinued to replicate their misrepresentations on the new product lines. Defendant continues to launch new product lines and flavors to diversify its portfolio to maintain its competitive edge, making it likely that Defendant will continue to misleadingly advertise its Products and perpetuate the misrepresentations regarding the protein in its Products.

## PLAINTIFFS' EXPERIENCES

**Plaintiff Lisa Chong**

54. Plaintiff Lisa Chong has purchased KIND Nut Bars from various Safeway and Lucky Supermarket stores throughout California, including in Daly City, since 2016. She purchased at least the following flavors of the KIND Nut Bars -- the Dark Chocolate Cherry Cashew, Cranberry Almond, Caramel Almond & Sea Salt, Dark Chocolate Nuts & Sea Salt, Blueberry Vanilla Cashew, Almond & Coconut, and Peanut Butter Dark Chocolate.

55. Lisa Chong made each of her purchases after reading and relying on the truthfulness of Defendant's product label that promised the Products contained a specified amount of protein per serving on the front of the product package (such as "4g PROTEIN" per serving for the Dark Chocolate Cherry Cashew bars). But on each of the Products she purchased, Defendant misrepresented the protein contents of the Products as containing more grams of protein than they actually contain, and as far more than they actually provide, when adjusted by the PDCAAS.

56. At the time of each of her purchases of the Products, Ms. Chong did not know that the Products did not contain or provide the amount of protein represented on the label. As a result of Defendant's misrepresentations and omissions, the Products have no, or, at a minimum, a much lower value to Plaintiff.

57. Ms. Chong not only purchased the Products because the labels said that they contained a specified amount of protein per serving, but she also paid more money for the Products than she would have paid for other or a similar protein product that was not mislabeled regarding the number of grams of protein it contained.

58. Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Ms. Chong would not have purchased them or, at a very minimum, she would have paid less for the Products.

Class Action Complaint

59.     Ms. Chong continues to desire to purchase protein products, including those marketed and sold by Defendant. If Defendant's Products were reformulated to provide the grams of protein that are represented on the labels, Ms. Chong would likely purchase Defendant's Products again in the future. Ms. Chong regularly visits stores where Defendant's Products and other protein products are sold. Because Ms. Chong does not know the formula for Defendant's products and cannot test whether or not the Products provide the amount of protein that is represented on the label, Ms. Chong will be unable to rely on Defendant's labels when shopping for protein products in the future absent an injunction that prohibits Defendant from labeling their products with the incorrect number of grams of protein that each serving contains. Should Defendant begin to market and sell a new line of products, Ms. Chong could be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation.

**Zack Schwartz**

60.     Plaintiff Zack Schwartz has purchased KIND Granola, including the Dark Chocolate Clusters flavor, from Whole Foods stores throughout San Diego, California in 2020. Mr. Schwartz also purchased KIND Protein Bars, including the Crunchy Peanut Butter flavor, and KIND Nut Bars, including the Dark Chocolate Mocha Almond flavor, from Whole Foods or Sprouts in San Diego, California in 2020.

61.     Mr. Schwartz made each of his purchases after reading and relying on the truthfulness of Defendant's product label that promised the Products contained a specified amount of protein per serving on the front of the product package (such as "10g PROTEIN" per serving for the Dark Chocolate Clusters granola). But on each of the Products he purchased, Defendant misrepresented the protein contents of the Products as containing more grams of protein than they actually contain, and as far more than they actually provide, when adjusted by the PDCAAS.

62.     At the time of each of his purchases of the Products, Mr. Schwartz did not know that the Products did not contain or provide the amount of protein represented on the label. As a result of Defendant's misrepresentations and omissions, the Products have no, or, at a minimum, a much lower value to him.

63.     Mr. Schwartz not only purchased the Products because the labels said that they contained a specified amount of protein per serving, but he also paid more money for the Products than he would have paid for other or a similar protein product that was not mislabeled regarding the number of grams of protein it contained.

64.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Mr. Schwartz would not have purchased them or, at a very minimum, he would have paid less for the Products.

65.     Mr. Schwartz continues to desire to purchase protein products, including those marketed and sold by Defendant. If Defendant's Products were reformulated to provide the grams of protein that are represented on the labels, Mr. Schwartz would likely purchase Defendant's Products again in the future. Mr. Schwartz regularly visits stores where Defendant's Products and other protein products are sold. Because Mr. Schwartz does not know the formula for Defendant's products and cannot test whether or not the Products provide the amount of protein that is represented on the label, Mr. Schwartz will be unable to rely on Defendant's labels when shopping for protein products in the future absent an injunction that prohibits Defendant from labeling their products with the incorrect number of grams of protein that each serving contains. Should Defendant begin to market and sell a new line of products, Mr. Schwartz could be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation.

66.     Plaintiffs and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is untrue and/or misleading under California law and the products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

Class Action Complaint

## CLASS ALLEGATIONS

67.     Plaintiffs bring this class action lawsuit on behalf of themselves and proposed classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent he following groups of similarly situated persons, defined as follows:

> All persons in the State of California who purchased the Products between June 11, 2017 and the present.

68.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

69.     Numerosity: Plaintiffs do not know the exact size the Class, but they estimate that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

70.     Common Questions Predominate: This action involves common questions of law and fact to the potential classes because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products contained the amount of protein as represented on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

    a.   The true nature of the protein content in the Products;

    b.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and/or unlawful because of misrepresentations;

    c.   Whether Defendant's actions violate Federal and California laws invoked herein;

    d.   Whether labeling the Products as containing more grams of protein than they actually contain causes the Products to command a price premium in the market as

Class Action Complaint

compared with similar products that do not make such misrepresentations;

e.   Whether Defendant's advertising and marketing regarding the Products sold to the class members was likely to deceive reasonable consumers;

f.   Whether representations regarding the number of grams of protein in the Products are material to a reasonable consumer;

g.   Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

h.   The amount of profits and revenues earned by Defendant as a result of the conduct;

i.   Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j.   Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

71.   Typicality: Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

72.   Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the class. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible

1    recovery for class members.

2        73.    Superiority: There is no plain, speedy, or adequate remedy other than by

3    maintenance of this class action. The prosecution of individual remedies by members of the

4    classes will tend to establish inconsistent standards of conduct for Defendant and result in the

5    impairment of class members' rights and the disposition of their interests through actions to

6    which they were not parties. Class action treatment will permit a large number of similarly

7    situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

8    and without the unnecessary duplication of effort and expense that numerous individual actions

9    would engender. Furthermore, as the damages suffered by each individual member of the classes

10   may be relatively small, the expenses and burden of individual litigation would make it difficult

11   or impossible for individual members of the class to redress the wrongs done to them, while an

12   important public interest will be served by addressing the matter as a class action.

13       74.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the

14   management of this action that would preclude its maintenance as a class action.

15                            <u>**CAUSES OF ACTION**</u>

16       Plaintiffs do not plead, and hereby disclaim, causes of action under the FDCA and

17   regulations promulgated thereunder by the FDA. Plaintiffs rely on the FDCA and FDA

18   regulations only to the extent such laws and regulations have been separately enacted as state law

19   or regulation or provide a predicate basis of liability under the state and common laws cited in the

20   following causes of action.

21

22                   <u>**PLAINTIFFS' FIRST CAUSE OF ACTION**</u>
     **(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code §**
23                            **1750, *et seq.*)**
                      **On Behalf of Plaintiffs and the Class**

24       75.    Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint

25   as if set forth herein.

26       76.    Defendant's actions, representations and conduct have violated, and continue to

27   violate the CLRA, because they extend to transactions that are intended to result, or which have

28   resulted, in the sale or lease of goods or services to consumers.

77.    Plaintiffs and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

78.    The Products that Plaintiffs (and other similarly situated class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

79.    Defendant's acts and practices, set forth in this Class Action Complaint, led customers to falsely believe that the Products contained and provided the amount of protein claimed on the product package. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continue to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised. Finally, regarding California Civil Code §1770(a)(8), Defendant falsely or deceptively markets and advertises that, unlike other protein product manufacturers, it sells Products that contain more grams of protein than the Products actually contain. Further, Defendant failed to list the DRV of protein on some of its Products, such as the nut bars, nut clusters, cereals and oatmeal , as it was required to do.

80.    Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm. Plaintiffs and

those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

81.     Plaintiffs provided Defendant with notice and demand that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

82.     Plaintiffs also request that this Court award their costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Plaintiffs and the Class**

83.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

84.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

85.     Defendant made representations and statements (by omission and commission) that led reasonable customers to believe that the Products that they were purchasing contained more grams of protein per serving than the Products actually contained or provided. Further, Defendant failed to list the DRV of protein on some of its Products, such as the nut bars, nut clusters, cereals and oatmeal, as it was required to do.

86.     Plaintiffs and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Defendant's Products or paying less

for them.

87.     Defendant's acts and omissions are likely to deceive the general public.

88.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

89.     The aforementioned practices, which Defendant used, and continues to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

90.     As a direct and proximate result of such actions, Plaintiffs and the other class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

91.     Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Plaintiffs and those similarly situated lack any adequate remedy at law to obtain this restitution.

92.     Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

93.     Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek

1   legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiff,

2   those similarly situated and/or other consumers nationwide have no other adequate remedy at law

3   to ensure future compliance with the California Business and Professions Code alleged to have

4   been violated herein.

**PLAINTIFFS' THIRD CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiffs and the Class**

94.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action

Complaint as if set forth herein.

95.     Defendant has fraudulently and deceptively informed Plaintiffs that the Products

contain more grams of protein than they actually contain or provide. Further, Defendant failed to

list the DRV of protein on some of its Products, such as the nut bars, nut clusters, cereals and

oatmeal , as it was required to do.

96.     These misrepresentations and omissions were known exclusively to, and actively

concealed by, Defendant, not reasonably known to Plaintiff, and material at the time they were

made. Defendant knew or should have known the composition of the Products, and knew or

should have known that the Products did not contain or provide the amount of protein represented

on the label. Defendant's misrepresentations and omissions concerned material facts that were

essential to the analysis undertaken by Plaintiffs as to whether to purchase Defendant's Products.

In misleading Plaintiffs and not so informing Plaintiffs, Defendant breached its duty to them.

Defendant also gained financially from, and as a result of, its breach.

97.     Plaintiffs and those similarly situated relied to their detriment on Defendant's

misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been

adequately informed and not intentionally deceived by Defendant, they would have acted

differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of

them, or (iii) paying less for the Products.

98.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendant

intended to induce Plaintiffs and those similarly situated to alter their position to their detriment.

Specifically, Defendant fraudulently and deceptively induced Plaintiffs and those similarly

situated to, without limitation, purchase the Products.

99.     Plaintiffs and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

100.    As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

101.    Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiffs and those similarly situated.

### PLAINTIFFS' FOURTH CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiffs and the Class**

102.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

103.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

104.    In particular, Defendant has engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 21 C.F.R. § 101.9 (c)(7), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

105.    In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting that the Products contain and provide more grams of protein than they actually contain or provide; and (ii) failing to list the Protein DRV as required by FDA regulations.

106.    Plaintiffs and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

107.    Defendant's acts and omissions are likely to deceive the general public.

108.    Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

109.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

110.    As a direct and proximate result of such actions, Plaintiffs and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class members lost the amount they paid for the Products.

111.    As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

112.    Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the deceptive and/or unlawful trade practices complained of herein, plus interest thereon. Plaintiffs

and those similarly situated lack any adequate remedy at law to obtain this restitution.

113. Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

114. Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### PLAINTIFFS' FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### On Behalf of Plaintiffs and the Class

115. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein

116. Plaintiffs and members of the Class members conferred a benefit on the Defendant by purchasing the Products

117. Defendant has been unjustly enriched in retaining the revenues from Plaintiffs' and Class Members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products contained and provided specific amounts of protein per serving, when, in fact, the Products contained less protein than represented, and provided even less. This harmed Plaintiff and members of the class because they paid a price premium as a result.

118. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

119. Plaintiffs, therefore, seeks an order requiring Defendant to make restitution to them and other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as class counsel;

B. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D. An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E. An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F. An award of treble damages, except for those causes of action where treble damages are not legally available;

G. An award of restitution in an amount to be determined at trial;

H. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I. For reasonable attorneys' fees and the costs of suit incurred; and

J. For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: June 11, 2021                    **GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier/s/*
Seth A. Safier, Esq.
Marie McCrary, Esq.
Hayley Reynolds, Esq.

100 Pine Street, Suite 1250
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class Action Complaint

## EXHIBIT A

I, Lisa Chong, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      As set forth in my complaint, I purchased the KIND Nut Bars, including the Dark Chocolate Cherry Cashew, Cranberry Almond, Caramel Almond & Sea Salt, Dark Chocolate Nuts & Sea Salt, Blueberry Vanilla Cashew, Almond & Coconut, and Peanut Butter Dark Chocolate flavors, from various Safeway and Lucky Supermarket stores throughout Daly City, California during the Class Period.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 11th day of June 2021, in Daly City, California.



Lisa Chong

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

**Exhibit B**

| Product Type | Variety | Protein Claims |
|---|---|---|
| **Nut Clusters** | | |
| Nut Clusters | Dark Chocolate Nuts & Sea Salt | 4g plant protein |
| Nut Clusters | Peanut Butter Dark Chocolate | 4g plant protein |
| **Nut Bars** | | |
| Nut Bars | Dark Chocolate Nut and Sea Salt | 6g |
| Nut Bars | Caramel Almond & Sea Salt | 6g |
| Nut Bars | Milk Chocolate Almond | 6g |
| Nut Bars | Milk Chocolate Peanut Butter | 7g |
| Nut Bars | Extra Dark Chocolate Nuts & Sea Salt | 6g |
| Nut Bars | Peanut Butter Dark Chocolate | 7g |
| Nut Bars | Dark Chocolate Cherry Cashew | 4g |
| Nut Bars | Cranberry Almond | 5g |
| Nut Bars | Dark Chocolate Mocha Almond | 5g |
| Nut Bars | Blueberry Vanilla Cashew | 5g |
| Nut Bars | Peanut Butter | 6g |
| Nut Bars | Madagascar Vanilla Almond | 6g |
| Nut Bars | Salted Caramel Dark Chocolate Nut | 5g |
| Nut Bars | Pomegranate Blueberry Pistachio | 5g |
| Nut Bars | Dark Chocolate Cinnamon Pecan | 5g |
| Nut Bars | Raspberry Cashew Chia | 5g |
| Nut Bars | Dark Chocolate Almond Mint | 5g |
| Nut Bars | Maple Glazed Pecan and Sea Salt | 5g |
| Nut Bars | Blueberry Almond Pecan | 4g |
| Nut Bars | Fruit and Nut | 6g |
| Nut Bars | Honey Roasted Nuts and Sea Salt | 6g |
| **Breakfast Protein Bars** | | |

| Product Type | Variety | Protein Claims |
|---|---|---|
| Breakfast Protein Bars | Almond Butter | 8g |
| Breakfast Protein Bars | Dark Chocolate Cocoa | 8g |
| Breakfast Protein Bars | Peanut Butter Banana Dark Chocolate | 8g |
| **Protein Bars** | | |
| Protein Bars | Crunchy Peanut Butter | 12g plant protein |
| Protein Bars | Dark Chocolate Nut | 12g plant protein |
| Protein Bars | Almond Butter Dark Chocolate | 12g plant protein |
| Protein Bars | Caramel Nut | 12g plant protein |
| **Energy Bars** | | |
| Energy Bars | Chocolate Chunk | 10g |
| Energy Bars | Dark Chocolate Peanut Butter | 10g |
| Energy Bars | Peanut Butter | 10g |
| **Healthy Grains Granola** | | |
| Healthy Grains Granola | Peanut Butter Clusters | 10g |
| Healthy Grains Granola | Dark Chocolate Clusters | 10g |
| Healthy Grains Granola | Almond Butter Clusters | 10g |
| **Clusters** | | |
| Clusters | Almond Cashew Sunflower with Sunflower & Pumpkin Seeds | 5g plant protein |
| Clusters | Almond Pumpkin Chia Clusters with Pumpkin, Sunflower, Hemp & Chia Seeds | 6g plant protein |
| **Snack Mix** | | |
| Snack Mix | Dark Chocolate Peanut Butter Banana | 5g |
| Snack Mix | Dark Chocolate Nuts and Sea Salt | 5g |
| Snack Mix | Dark Chocolate Cherry Cashew | 4g |
| **Oatmeal** | | |
| Oatmeal | Dark Chocolate Almond | 5g |
| Oatmeal | Apple Cinnamon Almond | 5g |

| Product Type | Variety | Protein Claims |
|---|---|---|
| Oatmeal | Oats and Almond | 5g |
| Oatmeal | Cranberry Almond | 5g |
| **Protein Cereal** | | |
| Protein Cereal | Cinnamon Almond | 10g |
| Protein Cereal | Caramel Almond | 10g |
| Protein Cereal | Dark Chocolate Almond | 6g |
| Protein Cereal | Honey Almond | 6g |
| Protein Cereal | Cranberry Almond | 6g |
| Protein Cereal | Apple Cinnamon | 5g |
| **Nut Butter Bars** | | |
| Nut Butter Bars | Peanut Butter Dark Chocolate | 13g |
| Nut Butter Bars | Almond Butter Blueberry | 12g |
| Nut Butter Bars | Peanut Butter Crunch | 14g |
| Nut Butter Bars | Almond Butter Dark Chocolate | 12g |