UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LISA CHONG, et al.,

    Plaintiffs,

v.

KIND LLC,

    Defendant.

Case No. 21-cv-04528-RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

In this putative class action, named plaintiffs Lisa Chong and Zach Schwartz challenge the statements defendant KIND, LLC makes on the packaging of various "breakfast and snack products" sold under the KIND brand name regarding the protein content of those products. KIND moves to dismiss, arguing plaintiffs' claims, which all sound in state law, are preempted by the Food, Drug, and Cosmetic Act (FDCA).

Plaintiffs' counsel previously filed a nearly identical action against a maker of pancake and waffle mixes. *See Minor v. Baker Mills, Inc.*, No. 20-cv-02901 RS. A motion to dismiss in *Minor*, brought largely on the same grounds advanced here, was denied. It has now become apparent, however, that *Minor* was incorrectly decided. Because plaintiffs are attempting to use state law to impose labeling requirements that go beyond what the FDA regulations require, their claims are preempted and the motion to dismiss must be granted.

## II.  BACKGROUND

KIND manufactures, distributes, markets, and sells nut bars, granola, and other snack products. One of the ways KIND markets many of its products is by touting the grams of protein per serving on the front of its packages. Plaintiffs insist KIND's products do not contain or provide the amount of protein claimed on the front because KIND uses "low quality, incomplete protein sources that are of little use to the human body." Plaintiffs contend that KIND's labels are therefore misleading and the products misbranded under state and federal law. In addition to the claim that the amount of protein is overstated on the front of packaging, plaintiffs allege that KIND has failed to include a "% Daily Value" figure in the Nutrition Facts panels for some of its products.

Plaintiffs correctly note that this case is "nearly identical" to *Minor*. The original complaint in *Minor* focused on a theory that the grams of protein in the products had been overstated because defendant calculated the number using the "nitrogen method," rather than an "amino acid method." Although that complaint survived a motion to dismiss, the plaintiff subsequently amended to present a refined theory that the product labeling was misleading not only because of how the grams of protein were calculated, but also because the numbers were not adjusted for "digestibility," given the particular source of the protein. The complaint in this action similarly stresses the latter point.

Plaintiffs here argue that the present motion to dismiss on preemption grounds should be denied just like the motions in *Minor*. KIND, however, urges "a fresh look at the governing FDA regulations."

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544,

CASE NO. 21-cv-04528-RS

2

555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679. Claims sounding in fraud must meet a somewhat higher specificity standard as provided by Rule 9 of the Federal Rules of Civil Procedure.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

## IV. DISCUSSION

### A. Statements on the front of packaging

There is no dispute that if KIND's labeling practices are consistent with the requirements set out in FDA regulations, state law claims challenging those practices are preempted. *See Durnford v. MusclePharm Corp.*, 907 F.3d 595, 602 (9th Cir. 2018). There is also no dispute that KIND is expressly permitted by FDA regulations to state the amount of protein in grams in the Nutrition Facts panels of its products (1) using the "nitrogen method," and (2) *without* adjusting the number to reflect digestibility. The question is whether KIND may use those same numbers when stating the grams of protein elsewhere on product packaging. *Minor* held defendants cannot.

*Minor* concluded front-of-package statements regarding the amount of protein were "nutrient content claims." *See* 21 C.F.R. § 101.13(c) ("Information that is required or

permitted . . . to be declared in nutrition labeling, and that appears as part of the nutrition label, is not a nutrient content claim and is not subject to the requirements of this section. *If such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims.*" (emphasis added)). *Minor* then noted that when a manufacturer makes a nutrient content claim for protein, it is required to provide a "% Daily Value" figure in the Nutrition Facts panels. 21 C.F.R. § 101.9(c)(7)(i) ("A statement of the corrected amount of protein per serving . . . expressed as Percent of Daily Value, *may* be placed on the label, except that such a statement *shall* be given if a protein claim is made for the product . . . .")

To this point, the *Minor* analysis was sound. The order, however, then stated: "Where a "% Daily Value" figure *is* provided (either voluntarily or because the presence of a nutrition content claim elsewhere on the label requires it) the protein content used to derive that percentage *must* be calculated under the amino acid method." As support for that assertion, the order pointed to 21 C.F.R. § 101.9(c)(7)(ii), which states: "The 'corrected amount of protein (gram) per serving' . . . is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score corrected for protein digestibility . . . .").

The *Minor* order thereby conflated the reference in the regulations to "the amino acid score" with the "amino acid method" that the plaintiff had been arguing should be used to calculate the raw number of protein grams, independent of any correction for digestibility. The two terms refer to very different concepts. The *Minor* plaintiff urged use of the "amino acid method" to calculate the quantity of protein (in grams) in a serving of the product, because it apparently is more accurate in some instances than the nitrogen method expressly permitted by the regulations. The "the amino acid score corrected for protein digestibility," in contrast, takes the quantity of protein (in grams) and multiplies it by a numerical factor reflecting the digestibility of that particular kind of protein, which turns on how many of the essential amino acids that protein contains.

For example, protein from animal sources contains all the essential amino acids and is fully

CASE NO. 21-cv-04528-RS
4

digestible, so it is assigned a factor of 1—and its Protein Digestibility Corrected Amino Acid Score ("PDCAAS") will be the same as the number of grams of protein. Protein from oats, in contrast, typically gets a factor in the range of .5 to .6, meaning only 50-60 percent of the oat protein consumed will be digested and used by the human body.

Again, the regulations expressly authorize use of the nitrogen method when stating the quantity of protein in grams in Nutrition Facts panels—that method simply measures the amount of nitrogen and multiplies it by 6.25 as an indicator of the protein content, without any analysis of amino acids or digestibility. If a producer makes a protein nutrient claim, however, it must also provide a "% Daily Value" in the Nutrition Facts panel. That "% Daily Value" must be calculated using the PDCAAS, which reflects the amount of digestible protein, rather than just the raw number of grams of protein.

The regulations do not specify how the raw number of grams of protein must be calculated prior to applying the digestibility factor to produce the PDCAAS, however, there certainly is nothing that prohibits use of the nitrogen method. Thus, a producer is free to calculate the quantity of protein using the nitrogen method, then multiply that number by the appropriate factor based on the type of protein it is, and then use the resulting PDCAAS when calculating what "% Daily Value" is provided by a serving of the product. Indeed, plaintiffs' supplemental briefing includes a diagram expressly showing the nitrogen method is used to calculate the raw number of grams of protein which is then multiplied by the appropriate factor. (Dkt. No. 26, ECF p. 7). While plaintiffs assert amino acid analysis is a necessary step in calculating the factor used in the next step, they expressly acknowledge the nitrogen method is used to calculate the raw quantity.

The theory of the *Minor* order was that because a producer supposedly had to use "the amino acid method" when calculating "% Daily Value," it likewise had to use that purported method in front-of-package protein quantity claims, because "the apparent intent manifest in the structure of the regulations" was to require producers to use the more accurate amino acid method if they make a protein nutrient content claim. That "apparent intent," however, disappears with the recognition that the requirement in the regulations to calculate PDCAAS for purposes of stating

1   "'% Daily Value" is not a reference to using plaintiff's "amino acid method" for calculating the
2   raw quantity of protein.
3         Accordingly, *Minor* will not be followed to save plaintiffs' complaint here. As set out in
4   the recent decision of *Nacarino v. Kashi Company*, No. 3:21-cv-07036-VC (N.D. Cal. Feb. 9,
5   2022) a correct reading of the regulations establishes that producers may state grams of protein
6   even outside the Nutrition Facts panel calculated by the nitrogen method, and without adjustment
7   for digestibility. The motion to dismiss the claims based on front-of-packaging statements must be
8   granted. As in *Nacarino*, because the defect in the case lies in the legal theory, not the factual
9   allegations, the dismissal will be without leave to amend.

      B.  <u>Failure to provide "% Daily Value"</u>

      In *Minor*, the defendants did not argue preemption with respect to the claims for failure to include a "% Daily Value," and instead moved to dismiss them by arguing plaintiff could not show he had relied on the omission. Here, KIND argues the claims are subject to implied preemption under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

      Plaintiffs insist *Buckman* does not apply because their claims "parallel the FDA regulations." Although plaintiffs are correct that the FDCA does not preempt preexisting state common-law duties that "parallel federal requirements," it does preempt state-law claims that ultimately are dependent on the existence of violations of federal law. *Stengel v. Medtronic*, Inc., 704 F.3d 1224, 1228, 1235 (9th Cir. 2013). To navigate the "narrow gap" for non-preempted claims, plaintiffs must "rely[] on traditional state tort law which had predated the federal enactments in question." *Buckman*, 531 U.S. at 353; *see also Stengel*, 704 F.3d at 1235 (to avoid preemption, the state-law claim must "predate[] the federal enactments in question" and "not exist solely by virtue of those enactments").

      Plaintiffs here are not pursuing pre-existing, traditional, state tort law claims, rather they rely on California's Sherman Law, which post-dates and is entirely dependent upon the FDCA, in that it expressly adopts the FDCA and regulations as state law. It provides that "[a]ll food labeling

regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a) (emphasis added). As such, plaintiffs' claims based on the omission of the % DV in some of KIND's product labels are preempted. *See Stengel*, 704 F.3d at 1230 (FDCA impliedly preempts state law claim that "originates from, is governed by, and terminates according to federal law" (quotation marks omitted)). Those claims must also be dismissed.[1] Because the defect again is one of theory, not factual sufficiency, no leave to amend will be granted.

## V. CONCLUSION

The motion to dismiss is granted, without leave to amend. A separate judgment will issue.

**IT IS SO ORDERED**.

Dated: February 15, 2022

_____
RICHARD SEEBORG
Chief United States District Judge

---

[1] Dismissal likely would also be warranted on grounds that plaintiffs have not alleged a cognizable injury arising from the omissions.